## PEOPLE'S BANK v. CALHOUN.

1. An action pending in a State court cannot be removed to the Circuit Court, by written stipulation, where there is nothing in the latter or the record to show that, by reason of the subject-matter, or the character of the parties, the latter court can take cognizance of it.

2. In a foreclosure suit, the Circuit Court, having jurisdiction of the subject-matter and the parties, appointed a receiver, who, pursuant to its orders, took possession of the mortgaged road. In an action between other parties, subsequently brought in a State court, an attachment was sued out and levied upon the road. Pending an application thereupon made to the Circuit Court, to restrain the plaintiff from further proceeding with his attachment, he and the defendant to the action consented to its removal to the Circuit Court, where, upon a finding that the road was not, at the date of the levy of the attachment, the property of that defendant, the writ was dismissed. *Held*, that the Circuit Court had the right to determine upon the conflicting claims to the possession of the road, and that the parties to the action, by consenting to transfer it, did no more, in effect, than that court might have compelled them to do.

3. The deeds of the defendant transferring his interest in the road to the trustees named in the mortgage and to the railroad company bear date before the attachment against him was sued out. They were thereafter recorded. *Held*, that they were admissible in evidence.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

The People's Bank of Belville brought an action in the Circuit Court of the county of St. Clair, in the State of Illinois, at its April Term, 1876, against Edward F. Winslow and James H. Wilson, on two promissory notes, on which it alleged that the sum of $40,733.36 was due. At the commencement of the action, the bank, upon filing the requisite affidavit, setting

forth, among other things, the non-residence of the defendants, obtained a writ of attachment, which was levied on the right of way, iron track, &c., of the road known as the Belleville and O'Fallon Railroad, and its appurtenances, situate in that county. During that term the following stipulation, signed by the attorneys of record of the respective parties, was filed: " It is stipulated that on the fifth Monday of the term, or at any subsequent day of the term, this cause shall be removed to the proper Circuit Court of the United States, as by consent, petition, and bond waived; and all defendants agree to file the record of the cause in that court before the first day of the June Term, A.D. 1876, defendants' pleas to be there filed with record." On the said fifth Monday, the court, pursuant to that stipulation, ordered " that this cause be removed to the Circuit Court of the United States for the Southern District of Illinois; and that the clerk of this court certify a transcript of the papers and proceedings in this cause to said court, according to the statute in such case made and provided." ·

Philo C. Calhoun and George Opdyke, trustees named in the mortgage executed by the St. Louis and Southeastern Railway Company to secure its bonds, filed their bill of foreclosure in the said Circuit Court for the Southern District, Oct. 21, 1874, and the court thereupon appointed a receiver, and put him in possession of the mortgaged property, including that upon which the attachment sued out by the bank was levied.

After the record of the attachment suit was filed in the latter court, Calhoun and Opdyke presented, under a statute of Illinois permitting such a proceeding in attachment cases, a petition of interpleader, alleging that they, as trustees, and not Winslow and Wilson, were the owners of the railroad on which the writ had been levied, and praying that the attachment be dissolved. No defence was made by Winslow and Wilson to the suit against them; and the court rendered judgment against them for the sum due on the notes, and in the record of the judgment was incorporated an order of sale of the attached property. The issue made by the petition of Calhoun and Opdyke was tried some time after this, and judgment rendered in their favor, with an order dismissing or dissolving the attachment. This

latter issue, though triable by jury, was submitted to the court by an agreement waiving the jury.

A bill of exceptions, embracing sixty pages of the printed record, gives the history of this trial, and concludes as follows: —

"And now the court found the said property in said interplea described to be the property of said interpleaders, and that it was not subject to the said attachment, and was not the property of Edward F. Winslow and James H. Wilson at the date of levy of said attachment, but was the property of the interpleaders; to which ruling and decision of the court the plaintiff, by its counsel, at the time excepted.

"And the court ordered said attachment to be dismissed, and to this ruling and decision of the court plaintiff, by its counsel, at the time excepted, and inasmuch as the matters and things above set forth are not of themselves matters of record in said cause, the plaintiff presents this its bill of exceptions, which it prays may be signed and sealed and made part of the record, which is done.

                                    "S. H. TREAT." [SEAL.]

An exception was duly taken to the admission of certain evidence, which is mentioned in the assignment of errors, and stated in the opinion of the court.

The bank sued out this writ, and assigns for error that the court below erred: 1, In assuming and taking jurisdiction of the said cause; 2, In trying said cause and rendering judgment therein; 3, In dismissing the attachment; 4, In finding that the property levied upon by virtue of the attachment was not subject thereto, when it had at a previous term rendered judgment for the amount of the note sued on, and ordered that property to be sold to satisfy the writ; 5, In permitting the deed from James H. Wilson and wife, and Edward F. Winslow and wife, to George Opdyke and Philo C. Calhoun, dated Jan. 4, 1876, and recorded in April, 1876, purporting to convey the property levied on by the attachment, to be read in evidence on the trial of the issue made on the interplea of Opdyke and Calhoun; 6, In permitting the deed from James H. Wilson and Edward F. Winslow, and their wives, to the St. Louis and Southeastern Railway Company (consolidated), dated Jan. 5, 1876, and recorded in April, 1876, purporting to convey

the property levied on by attachment, to be read in evidence on the trial of the issue made on the trial of that interplea.

*Mr. Charles W. Thomas* for the plaintiff in error.

1. The Circuit Court had no jurisdiction. The removal was by consent, without averring any facts which would authorize it. It must affirmatively appear from the record that the Circuit Court had jurisdiction. *Kennedy* v. *Georgia State Bank*, 8 How. 586; *Dred Scott* v. *Sandford*, 19 id. 393; *Ex parte Smith*, 94 U. S. 455. Mere consent is wholly insufficient to confer it. *The Lucy*, 8 Wall. 307; *Railway Company* v. *Ramsey*, 22 id. 322; *City of New Orleans* v. *Gaines*, 22 How. 141.

The fact that the plaintiff is a corporation of Illinois, and the defendants are non-residents of that State, is immaterial. Citizenship and residence are not synonymous terms. *Robertson* v. *Cease*, 97 U. S. 646.

In a case like this, where the court was without jurisdiction, and its judgment a mere impediment to a proceeding in the proper forum, a plaintiff may procure the reversal of a judgment rendered in his favor, but which is really to his detriment. *Hartmann* v. *B. & O. F. R. R. Co.*, 64 Ill. 24; *Dred Scott* v. *Sandford, supra.*

2. At the January Term, 1877, the Circuit Court heard the cause, gave judgment in favor of the bank against the defendants for $43,266.66, and ordered a sale of the property to satisfy it, notwithstanding the interplea of Opdyke and Calhoun, claiming the attached property, was on file. At the next term it tried for a second time the title to the property, and found it to be in Opdyke and Calhoun, thereby not only reversing the former judgment, but denying the bank all recourse on the garnishee given it by the statute. The dismissal of the attachment was a dismissal of the case. This was error. *Bank of the United States* v. *Moss*, 6 How. 31.

3. But even conceding that the Circuit Court had jurisdiction, and that there was no error in its action, as disclosed by the record outside of the bill of exceptions, it erred in admitting in evidence the deed from Winslow and Wilson and their wives to Opdyke and Calhoun, and the deed from the same grantors to the St. Louis and Southeastern Railway Company.

Acknowledged and recorded after the attachment had been levied, they were entirely incompetent and irrelevant as proof of a legal title in the interpleaders superior to the lien of the writ; and in this proceeding that title is the only question at issue. *City Insurance Co.* v. *Commercial Bank*, 68 Ill. 348.

Upon this ground the bank, when the interpleaders had concluded their case, moved the court to find that the property was subject to the attachment. Had a jury been empanelled to try the issue, this would have been equivalent to moving an instruction to them, after the plaintiff had introduced all his evidence, to find the title to be in the defendant. This court will examine the bill of exceptions to ascertain whether in either case the Circuit Court erred in refusing the motion.

If the evidence given by the plaintiff be insufficient to sustain a verdict, so that one based thereon would be set aside, the Court may direct the jury what verdict to render. *Herbert* v. *Butler*, 97 U. S. 319.

*Mr. Benjamin H. Bristow* and *Mr. William S. Opdyke* for the defendants in error.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

It has long been the established doctrine of this court that no such exceptions as those taken in this case to the judgment of the court on the facts submitted to it can be inquired of here, under the provisions of the act providing for the mode and the effect of submitting cases triable by jury to the court alone.

There are, however, one or two exceptions to the admission of evidence on the trial which can be and have been assigned for error. A still more important question is raised by the record outside the bill of exceptions, which demands our attention. It relates to the jurisdiction of the case in the United States court as supposed to be acquired by the removal proceedings in the State court, which were founded on the written consent of the bank and of Winslow and Wilson, who were the only parties to the suit.

It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States

the jurisdiction to hear and decide a case. If this were once conceded, the Federal courts would become the common resort of persons who have no right, either under the Constitution or the laws of the United States, to litigate in those courts.

It is not necessary for us to decide whether a paper may not be drawn up and signed by the parties, which shows on its face that the case, either by reason of the citizenship of the parties or the subject-matter of the litigation, is properly cognizable in a Federal court, and that that court can, on their assent, take jurisdiction either by way of original proceeding or by removal from a State court.

No such case is presented by the agreement for removal found in this record. Nor does it anywhere appear in this record that the parties had the citizenship or the alienage which would authorize the Federal court to entertain jurisdiction of the case.

The record, however, shows that in October, 1874, prior to the beginning of the attachment suit, there was instituted in the Circuit Court of the United States a suit to foreclose a mortgage in which Calhoun and Opdyke, as trustees, were plaintiffs, and in which they procured the appointment of a receiver, who held possession of the railroad under the order of that court at the time the writ of attachment was levied. It is further shown that they made application to the court sitting in chancery to enjoin the bank from proceeding in the State court with its attachment. No disposition seems to have been made of this application, and it is a reasonable inference that the removal of the attachment suit from the State court into the court which had possession by its officer of the property attached was made to avoid the conflict which might have arisen if the cases had proceeded to final judgment in courts of different jurisdictions.

We think this was not only permissible, but that it was the proper course to be pursued in such case. The jurisdiction of the Circuit Court of the United States does not here depend on the citizenship of the parties, b .. on the subject-matter of the litigation. That was in the actual possession of that court when the State court attempted to levy its writ of attachment on the property. It was for the court having such possession

to determine how far it would permit any other court to interfere with that possession, and what effect it would give to the attempt of another court to seize the property so under its control. A court of equity may punish for a contempt of its authority persons who bring suits against corporations whose property is in the hands of its receiver, and it is the constant practice to ask its permission to institute suits against him when they concern such property.

The bank was attempting in the State court to enforce by judicial sale a rival and conflicting lien to that of Calhoun and Opdyke, who were proceeding in the Federal court to sell the same property under their lien. The latter court had not only obtained jurisdiction of the question of lien prior to the initiation of the bank's suit, but it had taken possession of the property by its receiver. It had thus drawn to itself the subject-matter of the litigation and the right to decide upon the conflicting claims to the possession and control of the road.

These principles are not new in this court. They will be found to be sustained by *Minnesota Company* v. *St. Paul Company*, 2 Wall. 609; *Watson* v. *Jones*, 13 id. 679; *Buck* v. *Colbath*, 3 id. 334; and *Freeman* v. *Howe*, 24 How. 450.

In consenting, therefore, to the voluntary transfer of the litigation from the State court into the Federal court, the parties did no more than what they could have been compelled to do by the injunction of the latter, and what would have been done by such compulsory order if they had not submitted to it by agreement. We do not think that there was error in the court entertaining jurisdiction of the plea of interpleader of Calhoun and Opdyke. *Wiswall* v. *Sampson*, 14 How. 52.

In the progress of the trial the intervenors offered in evidence a deed of trust made by Winslow and Wilson on the fourth day of January, 1876, conveying the railroad in question to Calhoun and Opdyke. Exception was taken to the admission of this deed because the certificate of acknowledgment did not state that the grantors were personally known to the officer taking it, and because the deed did not tend to prove the issue made.

As one of the certificates does state that Wilson and his

wife were personally known to the officer, the objection to its *admissibility* as to these grantors was clearly unfounded in fact.   The effect of the deed was for the court to consider afterwards.

As the deed professed to convey the property in controversy by the parties against whom the attachment ran, two months before the writ was issued, it is impossible to hold it to be irrelevant to an issue as to the ownership of the property at the date of the levy of the writ.

Similar objections were made to a deed made by the same grantors to the St. Louis and Southeastern Railway Company, of the fifth day of January, 1876, to which the same answers apply.

What effect should be given to the fact that these deeds were not recorded until after the levy of the bank's attachment we need not inquire, for that proposition does not go to their admissibility in evidence, and its decision depends upon other matters, both of law and evidence, as to which no question is raised by this record.

These are all the assignments of error requiring notice at our hands, and in these we find none.

*Judgment affirmed.*