HANDFORD et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1899.)

No. 1,105.

UNITED STATES—ACTION TO RECOVER LOGS.

Where the United States claims the ownership of logs in the possession of another on the ground that they were cut from government land, its remedy, like that of an individual, is by an action of replevin or trespass. It cannot seize the logs from one having them in his possession, and, by filing a libel against them, cast upon him the burden of proving his ownership; and a district court is without jurisdiction of such a proceeding.

In Error to the District Court of the United States for the Eastern District of Arkansas.

Morris M. Cohn (J. C. Yancey, Robert Neil, and J. W. Butler, on the brief), for plaintiffs in error.

H. F. Auten and Jacob Trieber, for the United States.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. C. R. Handford and J. S. Handford, the plaintiffs in error, purchased and had in their actual possession in their dock at Batesville, Ark., a raft of cedar logs. A person described as "a special agent of the general land office of the United States" appeared in Batesville, and seized the logs, took them out of the possession of the plaintiffs in error, and turned them over to the United States marshal for the district; and thereupon the United States district attorney for the district filed in the court below the following information:

"In the District Court of the United States for the Northern Division of the Eastern District of Arkansas.

"The United States vs. Two Rafts of Timber.

"Comes the United States, by Jacob Trieber and H. F. Auten, its attorneys, and informs the court that on the 21st day of April, 1898, at Batesville, in the district and division aforesaid, the special agent of the general land office of the United States seized and took into his possession for and in behalf of the United States, in pursuance of and obedience to the instructions of the honorable secretary of the interior of the United States, one raft of cedar timber, consisting of sixty-three sticks, of the value of ninety dollars, and that said agent turned the same over to the United States marshal for said district, who has since that time been, and is now, in possession thereof, by virtue of said seizure and of his office. The United States further informs the court that said timber so seized is the property of the United States, having been unlawfully cut from the lands of the United States, in violation of the statutes in such case made and provided. Wherefore the United States prays that monition issue to the marshal requiring him to give notice of said seizure to all persons who claim to have any right or interest in said timber, to the end that they may intervene herein, and that said property be adjudged the property of the United States, and for such further and other relief as it may be legally entitled to.'                                         Jacob Trieber,

"H. F. Auten,

"U. S. Attorneys."

In pursuance of an order of the court, notice of this proceeding was given by publication in a newspaper. The plaintiffs in error appeared, and prayed to be made parties defendant. This prayer was

denied, and thereupon, under protest, they put in a claim and answer, alleging that they were the owners of the logs. The logs were delivered to the claimants on stipulation, given under like protest, to pay their value or return them in case they were adjudged to be the property of the United States. The cause was tried before the court, who found that, "the burden of proof being on the interveners," the logs were the property of the United States, and decreed accordingly. The clause of the decree that "the burden of the proof being on the interveners" is explained by the record and briefs in this way: It seems that on the Upper White river, in a broken and sparsely settled region, there are extensive forests of cedar trees. Some of the land upon which these trees grow belongs to the United States, and some to individuals. Cedar logs are cut in that region, and floated down White river to Batesville, where they are sold to plaintiffs in error, and others, who are dealers in that kind of timber. It will be perceived at a glance that it would probably be quite difficult to prove that cedar logs found at Batesville were cut from the lands of the United States in the region mentioned. The government sought to escape this burden by seizing and taking them out of the possession of the plaintiffs in error, and filing the libel we have set out. It was assumed that by such proceedings the presumption that the logs were the property of the plaintiffs in error arising from their possession of them would be gotten rid of, and that after the seizure the presumption would be that they were the property of the United States, and that in any suit or action between the United States and the plaintiffs in error touching the ownership of the logs the burden of proof would rest on the plaintiffs in error to prove, not merely that they were in the actual and peaceable possession of the logs when the government agent seized them, but that the logs were not cut on government land. It is needless to say that the seizure of the logs had no such effect. The logs were not seized for a violation of the navigation or revenue or other laws of the United States providing for the seizure, forfeiture, and condemnation of property, and therefore section 909 of the Revised Statutes of the United States, and the presumptions arising in the class of cases mentioned, have no application to this case. A suit by the government to recover timber cut on the public lands, or its value, "is not a suit to recover a penalty, or to impose a punishment, or to declare a forfeiture." Stone v. U. S., 167 U. S. 178, 187, 17 Sup. Ct. 778, 781. The government claims to be the owner of the logs because they were cut on government land. The government's ownership of the logs derived in this way is not different from ownership acquired in any other way. The title of the government to the logs grown on the land of an individual, and purchased by it, is precisely the same that it is to logs grown on its own land; and if one should wrongfully take the logs of the government, purchased from the owner on whose land they grew, or wrongfully cut and remove logs from the land of the government, the remedy in either case is by an action of trespass or replevin. The case is not different in its legal aspects from what it would have been if the government agent had gone into the private residence of the plaintiffs in error, and seized and carried off their

furniture on the claim that it was made out of timber cut on government land, for "the timber at all stages of the conversion" remains the property of the owner. Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398. The right to seize and the legal consequences of the seizure would be the same. There is no higher or different right to seize logs cut from government land under existing laws than there is to seize any other kind of personal property which it is claimed the government owns. It is true that a private person may retake his personal property where it can be done without endangering the public peace. The government has this right also, but to no other or further extent, and with no different legal consequences, than in the case of a private person. Such extrajudicial redress, whether by the government or a private person, does not affect the title to the property seized, or deprive the person from whose possession it was taken of any legal right or presumption. Where the property is thus taken by one person out of the possession of another under claim of ownership, and that ownership is judicially challenged by the person from whose possession the property was taken, the burden of proof is cast upon the taker to prove his ownership whenever it is shown he took the property from the possession of the plaintiff. And this rule applies to the government as well as to a private person. If the government could be sued, the plaintiffs in error might have replevied the logs, and in that suit proof of their prior possession would have made a prima facie case upon which they would have been entitled to a verdict in the absence of countervailing testimony; and in any suit brought by the government in any form touching the ownership of the logs the same rule would obtain. In the brief filed on behalf of the plaintiff it is said: "The government, when it brought this action, came into court with the property in its possession, and with the legal presumption that its possession was rightful;" but this legal presumption that the possession of the government was rightful was dissipated the moment it was shown that that possession was acquired by taking the logs out of the possession of the plaintiffs in error on a mere claim of ownership. It is further said in the same brief: "It [the government] brought the property into court simply to allow any person having, or claiming to have, any right, title, or interest in the property, to come in, and make their claim, and establish the same by proof." But there is no law warranting any such proceeding. Assuming the government to be the owner of the logs, as it claimed to be when it seized them, the government is, by this proceeding, libeling its own property, which is a proceeding entirely unknown to the law. It is extremely clear that the district court had no jurisdiction of this anomalous case, and that all its proceedings are void. Gastrel v. Cypress Raft, 2 Woods, 213, Fed Cas. No. 5,266. "Undoubtedly, though not an inferior court, the district court is one of limited jurisdiction, and that it has jurisdiction of the particular case which it attempts to adjudicate must always appear. * * * A party cannot, by consent, confer jurisdiction where none would exist without it." Confiscation Cases, 20 Wall. 92, 107, 108. "It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide

a case. If this were once conceded, the federal courts would become the common resort of persons who have no right, either under the constitution or the laws of the United States, to litigate in those courts." People's Bank v. Calhoun, 102 U. S. 256. The disposition of the case which is rendered necessary leaves the logs in the possession of the plaintiffs in error. The appropriate remedy, and, indeed, the only mode of proceeding, by which the question of ownership to these logs can be judicially determined, is by an action of replevin or a suit for their value. The seizure by the government of the logs upon a claim of title leaves the question of ownership undetermined and indeterminable, for, the government being in possession of the logs, claiming to be the owner, can bring no action for the logs or their value, and no action for the logs or their value can be brought against the government, so that the ownership must remain forever unsettled. The judgment of the district court is reversed, and the case remanded, with instructions to dismiss the same for want of jurisdiction.