## In re PRAIRIE AVE. BLDG. CORPORA-TION.
### No. 2662.

District Court, E. D. Illinois.
June 19, 1935.

126

Frank E. McAllister, of Chicago, Ill., for petitioner-creditor.

Pritzker & Pritzker, of Chicago, Ill., for intervening petitioner.

LINDLEY, District Judge.

On February 7, 1935, the original petitioners, as creditors, filed with this court their petition under sections 77A and 77B of the Bankruptcy Act (11 USCA §§ 206, 207), against the debtor corporation, Prairie Avenue Building Corporation. After setting up their holdings, the petitioners averred that the debtor was subject to the provisions of section 77B; that it owned real estate in the city of Evanston, county of Cook, and state of Illinois; that it was incorporated in Illinois and had its principal place of business in that state, operating an apartment building. The necessary jurisdictional averments were included. It was averred further that a foreclosure proceedings had been instituted against the property; that a receiver in equity had been appointed and was in possession of the property under decree in the foreclosure proceedings; that the petitioners proposed to effect a reorganization of the property as provided in section 77B; and that they would be ready, willing, and able to submit the same with due diligence.

Service was had and thereafter, no answer having been filed, on the 8th day of June A. D. 1935, Judge Wham of this court heard the petition, approved the same as properly filed in good faith, and appointed one Fred Myers as temporary trustee, directed him to take possession of the property, and ordered the receiver of the state court to deliver possession thereof.

The court fixed a time for a hearing upon the permanency of the trusteeship and directed that plans of reorganization be filed on or before May 20th and objections thereto on or before May 30th and set same for hearing before the court. On April 6, 1935, a bondholders' committee, by leave of court obtained from Judge Wham, filed its intervening petition for the purpose of objecting to the jurisdiction of the court, and procuring vacation of the order of April 1, 1935, and dismissal of the action.

The court thereupon referred the matter to Walter J. Grant, special master, for the purpose of taking evidence upon the issues raised on said intervening petition. The master has filed his recommendations to the effect that the petition was filed in good faith, but that the pendency of a reorganization in the state court should deter this court from taking jurisdiction. The matter comes up upon exceptions to the report by both the original petitioning creditors and the interveners.

As this court has previously announced, section 77B does not contemplate intervention by bondholders' committees for the purpose of contesting the validity of the petition. Wisely or unwisely, Congress has seen fit to limit the parties who may question whether the petition was filed in good faith to certain specified classes of creditors and stockholders, and as previously said, the bondholders' committee does not come within either of such categories.

Another section of the act provides for intervention thereafter to protect all proper interests, and this court has uniformly held that such intervention is proper, but must be limited in subordination of the proceedings and in recognition of the validity thereof. Consequently, I am of the opinion that the bondholders' committee had no right to attack the order of the court made as provided by the act approving the petition. However, in view of the fact that Judge Wham has previously permitted the intervening petition to be filed, I have not vacated his order and shall not do so, but shall treat the intervening petition as properly filed and raising proper defenses.

The evidence before the master showed that in the year 1931 foreclosure was instituted in the circuit court of Cook county; that same resulted on August 31, 1931, in a decree of foreclosure; that upon the filing of the bill a receiver was appointed; that he entered upon and remained in possession of the property until he surrendered the same to the trustee appointed herein. At the time the petition was filed in this court, no sale of the property had been had; no reorganization of the same had been proposed. However, shortly after the filing of the petition, on February 16, 1935, the bondholders' committee presented a plan for reorganization saying that the outstanding indebtedness was $144,000; that holders of $134,700 of the bonds had deposited their bonds with the committee; that the committee was a self-constituted committee, none of the members of which were holders of bonds of the corporation or held any stock in the corporation. The evidence showed further that the plan proposed a sale of the property to a nominee of the bondholders and that subsequent to the filing of the petition here such sale was had and the property bid in for the sum of $78,000. The plan proposed that the nonconsenting bondholders should be paid $0.53 on the dollar of their holdings, which would be their full proportionate share of the sale price of the property. And apparently the assenting bondholders are willing and able to make such payment.

It was proposed to borrow some $6,000 and with this and the money on hand pay the nonassenting bondholders, the expense of the receivership, and of the bondholders' committee, and convey the property to a new corporation, which in turn would issue one class of stock to the bondholders who participate in the plan, on the basis of one share of stock for each $100 bond participating. Other details of the plan are apparently not now material.

The evidence showed that the petitioners were bona fide creditors; that they were dissatisfied with four years' delay in the proceedings in the state court; and that after the plan was proposed, counsel for the petitioners examined it and believed that it gave too great power to the comitee and permitted the committee to modify or change the plan without submitting such modifications to the depositing bondholders.

██ What other evidence was submitted before Judge Wham upon the original hear-

ing I do not know, but it is apparent that the evidence is sufficient to justify the entry of the original order, and that under the law this court should take jurisdiction of the petition filed in conformity with the provisions enacted by Congress.

██ A definite statement of all the elements of good faith is impossible. Like the terms "good intent" and "public policy," the words may have a connotation bearing differently upon the mental processes of different judges. In other words, the elements are vague and uncertain. Thus it has been said that there can be no precise definition of the words "public policy"; that no prescience of the precise definition is known. Kintz v. Harriger, 99 Ohio St. 240, 124 N. E. 168, 12 A. L. R. 1240 (1919); 6 Va. L. Rev. 120 (1920); 29 Yale L. J. 106 (1920); 68 U. Pa. L. Rev. 190; Gordon v. Gordon, 168 Ky. 409, 412, 182 S. W. 220, 221, L. R. A. 1916D, 576, Ann. Cas. 1917D, 886 (1916); American Casualty Ins. Co.'s Case, 82 Md. 535, 34 A. 778, 38 L. R. A. 97 (1896). So it is here difficult, if not inadvisable, to attempt any actual definition of the term "good faith." Obviously, however, it was the policy of Congress to clothe the judge with wide discretionary powers, and where proceedings have been pending for four years before any sale of the property is had, before any plan of reorganization is enunciated, and bondholders find that a self-constituted bondholders' committee is dictating the policy of the administration in the state court, their good faith in seeking a diligent reorganization in a court where no statutory period of redemption exists and where the whole of the creditors are bound by vote of majority, is not to be impugned. Thus the United States Circuit Court of Appeals for the Seventh Circuit in the Matter of Sterba, 74 F.(2d) 413, 416 said: "Congress has seen fit to extend the jurisdiction of the District Court and to extend the provisions of the Bankruptcy Act to estates of debtors who are insolvent but whose insolvency is traceable to abnormal conditions. This enlargement of jurisdiction, carrying duties in many instances administrative in character, must be assumed in the spirit in which it is delegated. It is not a case of the District Court assuming a jurisdiction which may conflict with the jurisdiction of a state court that has appointed receivers. The United States District Court has no alternative. The right is conferred upon a

debtor to petition the United States District Court for action, and the court must act."

The court said further: "The Congress in its wisdom, gave to the petitioner the right to apply to any United States District Court in the state wherein a corporate debtor is incorporated. The court is not the judge of the wisdom of such provision of the amendment. It must take the Act as it is passed. Again, it is not the United States District Court which is assuming jurisdiction. It is a jurisdiction which it cannot avoid. It should, and must, act unhesitatingly and in furtherance of the purpose of the Act which conferred the jurisdiction. It is unfortunate that there may be clashes over' jurisdiction or that animosities may develop between equity court receivers and counsel and trustees appointed under this section of the Bankruptcy Act. There is but one course open to the United States District Court. All state and Federal courts of equity must submit to and be bound by the lawful Congressional action such as bankruptcy legislation," which is expressly authorized by the Federal Constitution.

With this interpretation of the mandate of Congress by the Circuit Court of Appeals, the District Court, in the absence of proof of bad faith as to creditors who make a showing such as is made here, must approve the petition and take jurisdiction. No other course of action is open. The court would be violating its duty in interpretation and administration of the. acts of Congress if it failed to give effect thereto.

■ The committee's contention that the receivership is not a receivership in equity is completely answered by the decision of this court in Re Granada Hotel Corporation, 9 F. Supp. 909, and the affirmance thereof by the Circuit Court of Appeals on June 5, 1935, in, 78 F.(2d) 409.

The court is confronted with a practical situation, however, that raises a serious question as to proper administration with commendable diligence. As soon as the petition was filed in this court, after four years' delay, the bondholders with surprising celerity began their attempt to effect a reorganization that has not yet been approved by the state court. They have assured this court that a substantial majority of all the bondholders are favorable thereto. They produced evidence which upon a somewhat superficial examination of the plan is persuasive that it is feasible and proper for the best interest of the bondholders. There may be some question as to the propriety of all the fees that are contemplated in the plan for the committee and its officers, but such a question the state court is fully competent to deal with. The most discouraging feature is that there remains a period of fifteen months during which redemption from the sale had may occur. The plan originally proposed to cut off the equity of redemption by conveyance, but to date the latter has not been secured and this period of delay may work another delay for a period of fifteen to eighteen months.

■ However, it is not desirable that if this plan effectually works out and meets with the approval of the chancellor of the state court, there should be another court attempting to reorganize. We must take jurisdiction under the act, but as I understand the law, the court has a right, not to surrender that jurisdiction, but to permit the state court chancellor opportunity to pass upon the feasibility of the plan and work it out where it has thus far progressed. Even where the court possesses exclusive jurisdiction, it may permit a proceeding pending in another court to be completed, and, though the court of bankruptcy has paramount and exclusive jurisdiction over the property in its custody, it may nevertheless consent to a determination of rights in another court. People's Bank v. Calhoun, 102 U. S. 256, 26 L. Ed. 101; In re Kelley (D. C.) 297 F. 676; In re Johnson (D. C.) 127 F. 618. There can be no abdication of jurisdiction where mandate of Congress is, as here, involved. In re Manbeach Realty Corporation (D. C.) 10 F. Supp. 523; United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055; Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215. But if this plan can be immediately passed upon by the state court chancellor, if that court finds the same feasible and approves the same, there is no reason why this court should seek to upset what has been accomplished and start anew. Consequently, with due regard to what has been accomplished and with a desire to promote the same if the chancellor finds same to be proper, this court will retain jurisdiction, possession, and custody of the property and permit the reorganization to proceed in the state court, and if within the course of a reasonable time same is perfected, the trustee of this

court will surrender the property in pursuance of the reorganization plan upon payment to him of such reasonable fee and compensation and costs herein as may be fixed by the court. There should be a co-operative attempt upon the parts of all parties to keep down the cost and expenses and save for the creditors all that is possible to save, and this court will exercise its full jurisdiction in the promotion of such intent. If the plan shall not be approved by the chancellor of the state court, or if it shall not be finished and completed with all due diligence, because of redemption or otherwise, this court will direct plans of reorganization to be filed here and proceed with the administration of 77B. The special master's report will be approved in so far as it concurs with what the court has said here and disapproved in so far as the court has herein otherwise directed.