595 F.2d 332
 Ron BURLESON, Plaintiff-Appellant,
v.
COASTAL RECREATION, INC., Defendant-Third Party Plaintiff-Appellee,
v.
INLAND SAILBOATS, INCORPORATED, Third Party Defendant-Fourth
PartyPlaintiff-Appellee,
v.
DUTTON LAINSON COMPANY, Fourth Party Defendant.
 No. 75-4184.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 12, 1978.
Dissenting Opinion May 16, 1979.
 
 Charles M. Wilson, III, Joe Hill Jones, Dallas, Tex., for plaintiff-appellant.
 D. L. Case, Jack Pew, Jr., Dallas, Tex., for Coastal Recreation.
 Thomas G. Nash, Jr., Dallas, Tex., for Inland Sailboats, etc.
 Before BROWN, Chief Judge, and THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.
 
 BY THE COURT:
 
 1
 This case having been considered on briefs and oral argument by the Court en banc pursuant to the order entered on July 11, 1978, 577 F.2d 354 (5 Cir. 1978), it is ORDERED that the en banc Court convened to consider this case is hereby DISSOLVED and the cause is remanded to the panel. (For panel disposition see 572 F.2d 509 (5 Cir. 1978).)
 
 
 2
 JOHN R. BROWN, Chief Judge, with whom Judges GODBOLD and TJOFLAT, Circuit Judges, join, dissenting:
 
 
 3
 I dissent to the Court's unenbancing the case and refusing to reconsider the panel's opinion. More so, I dissent to the Court's putting the imprimatur of the whole Court on the decision of the panel. The panel's decision, with deference, is simply wrong. It flies in the face of our decision in Fawvor v. Texaco, Inc., CA 5, 1977, 546 F.2d 636,[1] and worse, the Supreme Court's decision in Owen Equipment and Erection Co. v. Kroger, 1978, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274.
 
 
 4
 Burleson appeals from two judgments, one for him, one against. He asserts several grounds for reversal, including lack of subject matter jurisdiction over the diversity suit which he instituted below. I believe strongly that we must agree with his jurisdictional argument and that the case should be vacated and remanded.
 
 The Wayward Winch
 
 5
 In August 1973, Burleson, a Texas citizen, ordered a Balboa 26 sailboat from Inland Sailboats, Incorporated ("Inland"), a Texas corporation with its principal place of business in Dallas. The Balboa 26 manufactured by Coastal Recreation, Inc. ("Coastal"), a California corporation has a swing keel which is operated by a hand-cranked winch. The winch is manufactured by Dutton Lainson Company.
 
 
 6
 On March 1, 1974, Ed Maybaum, a salesman for Inland, helped Burleson rig his new boat. Burleson and Maybaum discovered that the winch handle on the new Balboa was different from the snap-on winch handle Burleson had previously seen both in the sales literature provided him and on Maybaum's own Balboa. The one delivered with Burleson's boat was made to be affixed by means of a lock nut. No instructions or warnings were supplied to Burleson concerning its use.[2] As delivered, the handle and lock nut were not attached to the winch. That day Maybaum affixed the handle to the winch without the use of the nut and lowered the keel.[3]
 
 
 7
 The following day when Burleson was raising the keel, he let go of the handle so that he could check the boat for leaks. The handle began to spin and flew off, striking Burleson in the skull. This blow caused almost total blindness in his right eye and necessitated plastic surgery to rebuild one side of his face.
 
 
 8
 Burleson brought a diversity action against Coastal seeking $510,000 in damages in the Texas Federal District Court. His cause of action was based on negligence, strict liability and breach of warranty. Coastal in turn brought a third party complaint against Inland, whereupon Burleson amended his complaint to include Inland, a nondiverse party, as a defendant. Burleson alleged ancillary and, alternatively, pendent jurisdiction over his claim against Inland.[4]
 
 
 9
 Inland moved to dismiss the action for want of jurisdiction.[5] Judge Hughes denied the motion on the following basis:
 
 
 10
 After a review of the motion, the briefs, the pleadings, and the current law on both the majority and minority views regarding the joinder of a third party defendant as a party defendant by plaintiff, where such joinder destroys diversity, this Court chooses to adopt the minority view in this particular case.
 
 
 11
 Here, good diversity exists as between Ron Burleson and Coastal Recreation, Inc. However, Ron Burleson and Inland Sailboats are both Texas residents. In arriving at the decision that this Court will retain jurisdiction, the Court has considered the cases of Saalfrank v. O'Daniel, 390 F.Supp. 45 (N.D.Ohio W.D.1975) and Fawvor v. Texaco, 387 F.Supp. 626 (E.D.Tex.1975), and finds that it substantially agrees with them. Where there is no evidence of collusion or showing of prejudice, and the case has proceeded for a good length of time in Federal Court, it is more equitable and desirable to retain jurisdiction there.[6]
 
 
 12
 The case proceeded to trial and was submitted to the jury on special interrogatories[7] under Rule 49(a), F.R.Civ.P. The jury assessed damages in the amount of $30,000 and found the percentage of the parties' negligence that caused the injuries to be:
 
 
 13
 However, the jury additionally found that Inland's negligence was not a proximate cause of the injury.[8] Burleson moved for a mistrial on the basis that the jury returned an incomplete and conflicting verdict. Following the denial of this motion and Coastal's stipulation to assume the 10% Negligence assigned to Inland,[9] the District Court by judgment assessed 55% Of the $30,000 in damages against Coastal and awarded plaintiff $16,500.[10] The District Court also entered a take nothing judgment in favor of Inland on Burleson's claim and on Coastal's third party claim.[11]
 
 
 14
 Burleson appeals from the judgments, asserting various trial errors[12] and lack of subject matter jurisdiction. Because I am forced to conclude that the District Court was without jurisdiction, I do not reach the other issues presented on appeal.[13]
 
 No Jurisdiction
 
 15
 The issue first raised by Inland and decided in Burleson's favor below about which he now unabashedly complains is this: Must there be an independent basis for jurisdiction to sustain a state-created cause of action by the plaintiff in a diversity suit against a third party defendant when the plaintiff and the third party defendant are citizens of the same state and no questions of federal law are involved in the original action or in the plaintiff's action against the third party defendant? After Burleson filed the present appeal, this Court answered that question affirmatively in Fawvor v. Texaco, Inc., 5 Cir., 1977, 546 F.2d 636, Rev'g, E.D.Tex., 1975, 387 F.Supp. 626,[14] and the Supreme Court approved that ruling in Owen Equipment and Erection Co. v. Kroger, 1978, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274.
 
 
 16
 The only distinction between this case and Fawvor lies in the fact that Fawvor was decided on an interlocutory appeal taken by the third party defendant before trial. Here the issue is raised by the self-same party invoking federal jurisdiction in the first instance after opposing an initial motion to dismiss and after the case has gone to judgment. Thus, the Court must decide whether this is a distinction without a difference and, if that be so, what disposition is required on remand.
 
 
 17
 It has long been the rule that subject matter jurisdiction cannot be waived or conferred by consent of the parties.[15] Subject matter jurisdiction is an issue which can be raised at any time, and if not raised by the parties, it can and must be raised by the courts at Any level of the proceedings.[16] Moreover, parties who have invoked the aid of federal courts or consented to litigate before them are not estopped from challenging jurisdiction at a later time,[17] regardless of the anomalous results and the inequities caused by allowing them to do so.[18] These rules have evolved in order to prevent expansion of federal judicial power which is constitutionally and statutorily limited. E. g., American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 17-18, 71 S.Ct. 534, 95 L.Ed. 702; Paxton v. Weaver, 5 Cir., 1977, 553 F.2d 936, 942.
 
 
 18
 Thus, unaware of any legal bar to Burleson's challenge to jurisdiction, and bound by Fawvor and Kroger,[19] I turn to the question of what disposition is in order. The decisions in American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, On appeal following remand, 5 Cir., 1953, 207 F.2d 113, Cert. denied, 1954, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069, control here.
 
 
 19
 Finn involved a suit brought by a Texas citizen in state court against two nonresident insurance companies and their agent, a Texas citizen. American Fire sought removal to federal court where, after a trial on the merits, judgment was entered against American and in favor of the other two defendants. American Fire moved to vacate that judgment on the ground that the case had been improperly removed. The District Court denied that motion and this Circuit affirmed. 181 F.2d 845. The Supreme Court reversed, holding that since removal had been improper and because the District Court would not have had jurisdiction had the action been brought there originally, American was not estopped to assert lack of jurisdiction. 341 U.S. at 16-17, 71 S.Ct. at 541-542, 95 L.Ed. at 710. And this was so despite the fact that the Texas defendant like Inland here whose presence had destroyed diversity jurisdiction had been absolved of liability:
 
 
 20
 The posture of this case even at the time of judgment also barred federal jurisdiction. A Texas citizen was and remained a party defendant. The trial court judgment, after decreeing recovery against American Fire and Casualty Company on the jury's verdict, added, over American's objection,
 
 
 21
 "It is Further Ordered, Adjudged and Decreed that the Plaintiff take nothing as against Defendants, Indiana Lumbermens Mutual Insurance Company and Joe Reiss, individually and doing business as the Joe Reiss Insurance Agency, and that such Defendants go hence without day with their costs."
 
 
 22
 By this decree the merits of the litigation against Reiss were finally adjudicated. The request of respondent (American) to dismiss Reiss after the judgment was not acted upon by the trial court.[20]
 
 
 23
 The Supreme Court reversed the judgment of this Court and "remanded to the District Court with directions to vacate the judgment entered and, if no further steps are taken by any party to affect its jurisdiction," to remand to the state court. 341 U.S. at 18-19, 71 S.Ct. at 542, 95 L.Ed. at 711. The Court thus recognized that it is up to the parties to perfect jurisdiction and that if they do not, the action must be dismissed. The Court, however, specifically did not reach the question of whether, if dismissal of the nondiverse party were allowed, a new judgment could be entered on the old verdict without a new trial. Id. at n. 18.
 
 
 24
 On remand, the District Court allowed dismissal of the nondiverse party and ordered a new trial. The second jury award was almost $3,000 less than the original verdict. On appeal to this Court, the judgment was reversed and remanded with instructions to enter judgment on the first verdict, one judge dissenting. Finn v. American Fire & Casualty Co., C.A.5, 1953, 207 F.2d 113. The majority held that once jurisdiction was perfected by dismissing the nondiverse party, it was within the discretion of the trial court to grant a new trial or to enter judgment on the old verdict. However, the Court concluded that the District Court had not exercised that discretion:
 
 
 25
 The district judge (who) ordered the new trial in this case never saw or heard the witnesses in either trial. He did not act in the exercise of his judicial discretion, but under the compulsion of a mistake of law. He considered all the proceedings in the first trial a nullity because the court conducting it was "wholly without jurisdiction." He entertained no doubt that the plaintiff was entitled to dismiss the action as to the resident defendant; but he ordered a new trial because, prior to said amendment, he considered that the district court "had never at any time had jurisdiction of this case." On this record, the court of appeals has the power to exercise the discretion that primarily belonged to the district court but which the latter failed to exercise. . . .
 
 
 26
 . . . Every consideration of promptness and dispatch in the administration of justice demands that the first trial should be preserved In the absence of prejudice by reason of the joinder of the resident defendant. This court has already held that the first trial was free from error; and, apart from the jurisdictional matter, the Supreme Court did not disturb that holding.[21] A new trial was not mandatory on jurisdictional grounds, and we see no reason why the presence of Reiss, as a party defendant, prejudiced the insurance company. . . . The Supreme Court limited its holding to the requirement that judgment could not be entered on the old verdict while Reiss was a party. It did not foreclose such action after dismissal of the case as to him.
 
 
 27
 207 F.2d at 116-17 (emphasis added). The Court remanded the case with directions to enter judgment for the plaintiff on the original verdict. Contrary to the holding of the panel,[22] however, our opinion in Finn does not compel or justify direct dismissal of Inland and entry of judgment on the old verdict. That reading is inconsistent with the Supreme Court's recognition that it was up to the parties to perfect jurisdiction on remand. Rather, our Finn merely sets out the appropriate course for the District Court should the parties act to perfect jurisdiction on remand. Moreover, it makes clear that, if the parties perfect jurisdiction, the decision whether to grant a new trial or enter judgment on the old verdict should generally be left to the trial court.
 
 Kroger The Coup De Grace
 
 28
 Finally, the Court's finding jurisdiction where none exists is in the teeth of the Supreme Court's opinion and action in Kroger.
 
 
 29
 There, as here, a state claim was brought between a plaintiff and defendant of diverse citizenship (OPPD). The District Court clearly had jurisdiction. Thereafter the defendant impleaded a third party defendant (Owen) who was a citizen of the same state as the plaintiff. The plaintiff was then granted leave to amend her complaint by naming Owen. OPPD moved for and was granted summary judgment, but the jury returned a verdict for the plaintiff against Owen. The Court, reversing the trial court and the Court of Appeals, held that there was no federal jurisdiction to which ancillary or pendent jurisdiction could attach. The Court stated
 
 
 30
 Thus it is clear that the respondent could not originally have brought suit in federal court naming Owen and OPPD as codefendant, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued Owen initially. In either situation, in the plain language of the statute, the "matter in controversy" could not be "between . . . citizens of different States."
 
 
 31
 It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded. Yet under the reasoning of the Court of Appeals in this case, a plaintiff could defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants. If, as the Court of Appeals thought, a "common nucleus of operative fact" were the only requirement for ancillary jurisdiction in a diversity case, there would be no principled reason why the respondent in this case could not have joined her cause of action against Owen in her original complaint as ancillary to her claim against OPPD. Congress' requirement of complete diversity would thus have been evaded completely.
 
 
 32
 437 U.S. at 374-75, 98 S.Ct. at 2403, 57 L.Ed.2d at 282-83.
 
 
 33
 What we have done is exactly what the Court there disallowed.
 
 
 34
 To allow the requirement of complete diversity to be circumvented as it was in this case would simply flout the congressional command. 21
 
 
 35
 437 U.S. at 377, 98 S.Ct. at 2405, 57 L.Ed.2d at 284.
 
 And footnote 21 makes it doubly clear:
 
 36
 Nor can the corpse of no-jurisdiction be resuscitated by ordering the District Court to dismiss Inland as a party (see note 5 to the panel's opinion, 5 Cir., 1978, 572 F.2d at 514). Inland, the Texas defendant, was expressly brought into the case by the plaintiff. Only the plaintiff, and not this Court or the trial court could involuntarily dismiss Inland over the objection of the plaintiff. As Finn, supra (see note 22) makes clear, for jurisdiction purposes the Court must take the case as the parties have made it and only the plaintiff may effect the dismissal an act which the plaintiff strongly disavows and would never likely perform.[23]
 
 
 37
 In Fawvor we made a clear choice and laid down the stringent rule which the Supreme Court in Kroger embraced. By the simple expedient of our ordering dismissal of the non-diverse defendant after trial, verdict and judgment, we circumvent both holdings. If we can do it for Coastal Recreation, Inc., common decency will compel such action in the future. This after-the-event resuscitation will encourage plaintiffs to try, and District Judges to tolerate, impleaders in the certain knowledge that all will be purified by the Court of Appeals whose wand of dismissal disinfects the infected jurisdictionless Court.
 
 
 38
 The Court therefore ought to vacate both judgments entered below, decline to reach the merits, and assess the costs of this appeal to the appellant. Rule 39(a), F.R.A.P. On remand, if neither Burleson nor Inland seeks to perfect jurisdiction, the action ought to be dismissed with costs assessed against Burleson under 28 U.S.C.A. § 1919; Devost v. Twin State Gas & Elec. Co., 1 Cir., 1918, 252 F. 125. If the jurisdictional defect is corrected, the District Court should decide whether Burleson was prejudiced by Inland's presence and, if not, whether judgment can be entered on the old verdict without a new trial.
 
 
 
 [1]
 Fawvor was expressly noted in note 1 of the Supreme Court's decision in Kroger, 437 U.S. at 367, n.1, 98 S.Ct. at 2399 n.1, 57 L.Ed.2d at 278, n.1
 
 
 [2]
 Dutton Lainson supplied such instructions and warnings to Coastal, but Coastal failed to forward them to Inland
 
 
 [3]
 Tr. at 84. There is a conflict in the testimony over the nut. According to Burleson, Maybaum stated that since the nut was not needed, it could be thrown away (Tr. at 85). Maybaum doubted that he had given Burleson such advice (Tr. at 380)
 
 
 [4]
 Both Inland and Coastal filed third party claims against Dutton Lainson, but Burleson never sought relief from this third party defendant. At the close of the evidence, Dutton Lainson's motion for an instructed verdict was granted. R. at 195-96. No appeal was taken by Coastal or Inland from this judgment
 
 
 [5]
 Burleson opposed this motion. See May 9, 1975, Memorandum of Authorities in Support of Plaintiff Ron Burleson's Answer to Defendant Inland Sailboat, Inc.'s, Motion to Dismiss for Want of Jurisdiction
 
 
 [6]
 Order Overruling Motion to Dismiss, dated June 12, 1975, R. at 69
 
 
 [7]
 The jury's answers insofar as pertinent here were as follows:
 NO. 1
 Do you find from a preponderance of the evidence that Inland Sailboats failed to deliver a boat, winch and handle as demonstrated and represented to Burleson?
 ANSWER Yes
 NO. 2
 Do you find from a preponderance of the evidence that such failure, if any, was a producing cause of Ron Burleson's injuries?
 ANSWER Yes
 NO. 3
 Do you find from a preponderance of the evidence that Coastal failed to deliver a boat, winch and handle to Inland as represented?
 ANSWER Yes
 NO. 4
 Do you find from a preponderance of the evidence that such failure, if any, was a producing cause of the injuries of Ron Burleson?
 ANSWER Yes
 NO. 5
 Do you find from a preponderance of the evidence that the winch and handle in question were in a defective condition as hereinbefore defined when it left the possession of:
 (a) Coastal?
 ANSWER No
 (b) Inland?
 ANSWER No
 NO. 7
 Do you find from a preponderance of the evidence that Ron Burleson misused the equipment by using the handle to the winch without securing it with the nut at the time of the incident?
 ANSWER Yes
 NO. 8
 Do you find from a preponderance of the evidence that such misuse, if any, was a producing cause of Ron Burleson's injuries?
 ANSWER Yes
 NO. 9
 Do you find from a preponderance of the evidence that Ed Maybaum advised Ron Burleson on the use of the winch and handle in question?
 ANSWER Yes
 NO. 10
 Do you find from a preponderance of the evidence that Ed Maybaum was negligent in his advice, if any, to Ron Burleson on the use of the winch and handle in question?
 ANSWER Yes
 NO. 11
 Do you find from a preponderance of the evidence that Ed Maybaum's negligence, if any, was a proximate cause of the injuries to Burleson?
 ANSWER No
 NO. 12
 Do you find from a preponderance of the evidence that Ron Burleson had full knowledge and appreciation of the dangerous condition if any, in using the handle to the winch without securing it with the nut?
 ANSWER Yes
 NO. 13
 Do you find from a preponderance of the evidence that Ron Burleson voluntarily and of his own volition used the winch and handle in question with full knowledge and appreciation of such condition?
 ANSWER Yes
 NO. 14
 Do you find from a preponderance of the evidence that Ron Burleson was negligent in failing to attach the nut to the handle of the winch at the time and on the occasion in question?
 ANSWER Yes
 NO. 15
 Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries of Ron Burleson?
 ANSWER Yes
 NO. 16
 Do you find from a preponderance of the evidence that Coastal failed to furnish to Inland instructions for the use of the winch and handle?
 ANSWER Yes
 NO. 17
 Do you find from a preponderance of the evidence that such failure, if any, was negligence?
 ANSWER Yes
 NO. 18
 Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries to Ron Burleson?
 ANSWER Yes
 NO. 19
 What percentage of the negligence that caused the injuries of Ron Burleson do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?
 Answer by stating the percentage, if any, opposite each name, and the total of percentage must add up to 100%.
 (1) Inland Sailboat Sales 10%
 ----
 (2) Coastal Recreation %
 ----
 (3) Ron Burleson 45%
 ----
 (1) Inland Sailboat Sales 10 % (2) Coastal Recreation % (3) Ron Burleson 45 %
 Inland 10%
 Coastal 45%
 Burleson 45%
 
 
 [8]
 See answer to Special Issue No. 11, note 7, Supra
 
 
 [9]
 Coastal's unilateral stipulation to assume the 10% Causal negligence found against Inland is contained in its Motion for Judgment filed October 10, 1975, R. at 192. Neither Burleson nor Inland agreed to this stipulation. See Supplemental Brief of Appellant Pursuant to the Court's Request, at 7; Supplemental Brief of Appellee, Inland Sailboats, Inc., Pursuant to the Court's Request, at 5
 
 
 [10]
 Judgment dated October 31, 1975, R. at 198
 
 
 [11]
 Judgment dated October 23, 1975, R. at 197
 
 
 [12]
 Burleson asserts that (i) the trial court committed reversible error in rendering judgment based on an incomplete jury verdict; (ii) the trial court should have directed a verdict on assumption of risk; (iii) the trial court gave an erroneous instruction on misuse, framed Special Issue No. 7 relating to misuse in a prejudicial manner, and should have directed a verdict for plaintiff on the misuse issue
 
 
 [13]
 See note 23, Infra
 
 
 [14]
 Judge Hughes had relied on the District Court's opinion in Fawvor to overrule Inland's motion to dismiss. See text accompanying note 6, Supra
 
 
 [15]
 E. g., People's Bank v. Calhoun, 1880, 102 U.S. 256, 260-61, 26 L.Ed. 101, 102; American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 17-18, 71 S.Ct. 534, 95 L.Ed. 702, 710; Iselin v. La Coste, 5 Cir., 1945, 147 F.2d 791, 795; Lowry v. International Brotherhood, etc., 5 Cir., 1958, 259 F.2d 568, 575; Warren G. Kleban Engineering Corp. v. Caldwell, 5 Cir., 1974, 490 F.2d 800, 803 n.2; Skidmore v. Syntex Laboratories, Inc., 5 Cir., 1976, 529 F.2d 1244, 1248 n.3
 
 
 [16]
 E. g., Texas v. Florida, 1939, 306 U.S. 398, 405, 59 S.Ct. 563, 567, 83 L.Ed. 817, 824; Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 70, 60 S.Ct. 44, 84 L.Ed. 85, 89; City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; Texas Construction Co. v. United States, 5 Cir., 1956, 236 F.2d 138; Lowry v. International Brotherhood, etc., 5 Cir., 1958, 259 F.2d 568; Skidmore v. Syntex Laboratories, Inc., 5 Cir., 1976, 529 F.2d 1244, 1248 n.3
 
 
 [17]
 E. g., Morris v. Gilmer, 1889, 129 U.S. 315, 326-27, 9 S.Ct. 289, 292, 32 L.Ed. 690, 694; Vallely v. Northern Fire Ins. Co., 1920, 254 U.S. 348, 352-53, 356, 41 S.Ct. 116, 117-118, 65 L.Ed. 297, 299-300, 301; American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702; Poole v. Lykes Bros. Steamship Co., 5 Cir., 1960, 273 F.2d 423; Page v. Wright, 7 Cir., 1941, 116 F.2d 449, 452-53, Cert. denied, 312 U.S. 710, 61 S.Ct. 831, 85 L.Ed. 1142
 
 
 [18]
 In Mansfield, C. & L. M. Ry. Co. v. Swan, 1884, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462, 464, the Supreme Court noted the inflexibility of the "no estoppel" rule:
 It is true that the plaintiffs below, against whose objection the error was committed, do not complain of being prejudiced by it, and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act.
 
 
 [19]
 Inland urges us to adopt the doctrine of ancillary jurisdiction to uphold the judgment in its favor. Supplemental Brief of Inland, at 5-11. This jurisdictional theory was specifically rejected in Fawvor, 546 F.2d at 639, and in Kroger, 437 U.S. at 375-77, 98 S.Ct. at 2403-2404, 57 L.Ed.2d at 283-84
 
 
 [20]
 341 U.S. at 17, 71 S.Ct. at 541, 95 L.Ed. at 710 (footnote omitted; emphasis added)
 
 
 [21]
 The Fifth Circuit had found that the first trial was free from error After concluding that the case had been properly removed. 181 F.2d at 846. It therefore had jurisdiction to reach the merits of the appeal. The Supreme Court could not have disturbed the no-error finding because it found federal jurisdiction lacking. United States v. Corrick, 1936, 298 U.S. 435, 440, 56 S.Ct. 829, 831-32, 80 L.Ed. 1263, 1268; Mansfield, C. & L. M. Ry. Co. v. Swan, 1884, 111 U.S. 379, 382-85, 4 S.Ct. 510, 511-513, 28 L.Ed. 462, 464-65; Mann v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 5 Cir., 1973, 488 F.2d 75, 76; Burbridge Foundation, Inc. v. Reinholdt & Gardner, 8 Cir., 1974, 496 F.2d 326, 328; Stewart v. United States, 7 Cir., 1952, 199 F.2d 517, 519; Rowe v. Nolan Finance Co., 1944, 79 U.S.App.D.C. 35, 142 F.2d 93; Cf. Fort Worth National Corp. v. Federal Savings & Loan Ins. Corp., 5 Cir., 1972, 469 F.2d 47
 The Supreme Court has summarized the effect of judgments rendered without jurisdiction:
 Courts are constituted by authority and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal. (Citations omitted.)
 Vallely v. Northern Fire Ins. Co., 1920, 254 U.S. 348, 353-54, 41 S.Ct. 116, 117, 65 L.Ed. 297, 300.
 
 
 [22]
 See 572 F.2d 509, 514
 
 
 [21]
 Our holding is that the District Court lacked power to entertain the respondent's lawsuit against the petitioner. Thus, the asserted inequity in the respondent's alleged concealment of its citizenship is irrelevant. Federal judicial power does not depend upon "prior action or consent of the parties." American Fire & Cas. Co. v. Finn, 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (19 A.L.R.2d 738.)
 
 
 [23]
 I see no basis for a belief that the parties will seek to perfect jurisdiction on remand. Burleson filed an action in state court prior to the expiration of the applicable Statute of Limitations. Supplemental Brief of Appellee, Inland Sailboats, Inc., Pursuant to the Court's Request, at 4. Thus, this case is in a somewhat different procedural posture than Finn. Finn sued three defendants because it was unclear which one was responsible. 341 U.S. at 14, 71 S.Ct. at 540, 95 L.Ed. at 709. Alternative claims were brought but the complaint prayed for a joint and several judgment. Having established American Fire's liability, Finn was apparently content to dismiss the nondiverse party Reiss. Dismissal of Reiss after judgment for want of jurisdiction may have posed problems because such dismissal would not have been on the merits and Reiss could not have defended on the basis of res judicata had Finn pursued his claim in state court. This dilemma might explain the trial court's failure to dismiss Reiss after judgment (see quotation from Finn at text accompanying note 20, Supra )
 Burleson, on the other hand, is seeking to establish joint and several liability of Coastal and Inland. We cannot as Coastal urges construe Coastal's ex parte stipulation to assume Inland's 10% Negligence as equivalent to a dismissal of Inland. Even if we could do so a doubtful proposition at best it would gain Inland nothing. A dismissal for lack of jurisdiction is not a merits determination and the finding of no proximate causation as to Inland would not be res judicata in the state action Burleson has filed. Inland seeks to preserve its favorable judgment both as to plaintiff and third party plaintiff Coastal (Inland's Supplemental Brief, Supra, at 3-4) which was entered without jurisdiction. It has little to gain by renewing its motion to dismiss. Burleson may not be willing to dismiss Inland for fear that judgment might be entered on the old verdict.
 Under these circumstances, even if we had jurisdiction to decide the merits of the appeal, see Dollar S.S. Lines, Inc. v. Merz, 9 Cir., 1934, 68 F.2d 594, and cases cited in note 21, Supra, I believe that to do so would be an exercise in futility since neither Burleson nor Inland has much incentive to perfect jurisdiction.